**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RAMON BLANCO and JOSE TORRES-MURPHEY,**

        **Plaintiffs,**

**-vs-**                                                            **Case No. 6:07-cv-828-Orl-22DAB**

**SPECIALTY PAINTING, INC., and**
**EDWARD MAHUNIK,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**   **MOTION FOR SUMMARY JUDGMENT (Doc. No. 33)**
>
> **FILED:**     **July 1, 2008**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

Plaintiffs filed suit pursuant to the Fair Labor Standards Act (herein "the FLSA"), asserting that they were owed unpaid overtime compensation from their ex-employer, Specialty Painting, Inc., and its principal, Edward Mahunik[1] (herein, collectively, "Defendants"). Defendants answered and denied any liability (Doc. No. 15). Defendants move for summary judgment, asserting that they are not liable under FLSA, as a matter of law. Defendants support their motion with an Affidavit of

---

[1] Plaintiffs alleged that Mahunik was an employer, within the meaning of 29 U.S.C. § 203(d) (Doc. No. 1 at Allegation 10).

Edward C. Mahunik (Doc. No. 33, Ex. C) and Depositions of Plaintiffs (Doc. Nos. 35-36). Plaintiffs oppose the motion (Doc. No. 40), and have filed the Deposition of Edward Mahunik (Doc. No. 40-2), the Deposition of Joseph Brazill (the foreman) (Doc. No. 40-3), the Affidavit of Ramon Blanco (Doc. No.40-6 - unsigned, and Doc. No. 41-signed), and certain other unsworn exhibits (Doc. No. 40-7 and 40-8).[2] The Court has reviewed the record, the evidence and arguments presented, and the applicable law. For the reasons set forth herein, it is **respectfully recommended** that the motion be **granted,** and judgment be entered in Defendants favor.

## *FACTS*

The following material facts, as presented by the parties, are undisputed. Plaintiffs worked as house painters for the corporate Defendant from September 2006 through early 2007 (Deposition of Torres-Murphy, pp. 6 and 18; Deposition of Blanco, p. 6). The work consisted of interior and exterior painting (including prep work) of residential properties (Deposition of Brazill at pp. 14-15). The houses were all new construction and were all located in Central Florida subdivisions (Doc. No. 33-4; Deposition of Brazill at pp.14-15).

The paint used by Defendants was normally delivered to the job site by Porter Paints, however, on rare occasion, one of the plaintiffs would go to the store and pick up paint, on the company's account (Deposition of Torres-Murphy at p. 8; Deposition of Brazill). The paint and other supplies used were purchased "off the shelf" and were not ordered by Defendants from out of state (Doc. No. 33-4). The corporate Defendant did not have an annual gross revenue of $500,000 or more at any time relevant to the suit (Doc. No. 33-4).

---

[2]Defendants have also filed a motion for leave to reply (Doc. No. 45), which is **denied,** as unnecessary, in view of the recommendation herein.

In addition to the above, Plaintiffs present other matters in their statement of facts, which the Court finds to be unsupported by the record evidence. Specifically, Plaintiffs assert that:

1. Porter Paints is a brand name for paint products manufactured and sold by international conglomerate PPG Industries.

2. The principal corporate office of PPG Industries, Porter Paints' parent company, is located in Pittsburgh, Pennsylvania.

3. Porter Paints is an active participant in interstate commerce and a global corporation.

4. Porter Paints manufacturers its paint primarily in the State of Kentucky.

5. From the factory in Kentucky, all paints sold outside the State of Kentucky, regularly travel in interstate commerce.

6. All paints sold in the Deland, Florida, Porter Paints store have traveled in interstate commerce prior to arriving in the Deland, Florida store, and the only thing the Deland store does is mix the paint.

The sole evidentiary support offered for the foregoing is Plaintiff Blanco's Affidavit (Doc. No. 43-2), in which Plaintiff states he is "fully familiar" with Porter Paints and their parent company, and purports to base all of the above on his "personal knowledge." The Affidavit does not set forth a basis for this knowledge, however, and none is apparent. Affidavits in support or opposition to a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. *See* Rule 56(e)(1), Federal Rules of Civil Procedure. Here, there is no showing that Plaintiff has personal knowledge of (and is competent to testify as to) the inner workings of a company that he has no affiliation with. The Affidavit is insufficient to establish the averments as "fact."

Plaintiffs also assert, without any evidentiary basis whatsoever, that David Weekley Homes (the owner of the houses painted):

1. "[I]s a national homebuilder, with offices and projects located in Arizona, Colorado, Texas, Florida, Georgia, South Carolina and North Carolina;"

2. "Throughout 2006 and 2007, David Weekley Homes regularly advertised its unsold pre-construction homes in interstate commerce;" and

3. "David Weekley Homes customarily and regularly utilized the internet, national print media, television, and radio campaigns to sell its houses, including those located in Florida, to customers who reside throughout the United States, including those outside the State of Florida" (Doc. No. 40).

The only support for these statements is an unsworn document that purports to be a printout of a webpage, apparently from David Weekley Homes company web site (Doc. No. 40-7). This does not meet the requirements of an affidavit or other acceptable evidence sufficient to establish the matters as "fact." Moreover, the webpage does *not* include the above representations, and, as will be seen, is irrelevant in any event.

The Court proceeds to analyze the issues based on the properly supported, undisputed facts of record.

### *SUMMARY JUDGMENT STANDARD*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.* 477 U.S. at 324-25 (internal quotations and citation omitted).

Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1246 (11th Cir.1999). The party opposing a motion for summary judgment, however, must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment."). Summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Celotex Corp.*, 477 U.S. at 322, 324-25.

### *ISSUES AND ANALYSIS*

Plaintiffs contend that they are entitled to overtime compensation, as set forth in FLSA. Defendants contend that, as a matter of law, Defendants are not liable to Plaintiffs under FLSA, as they do not meet the "enterprise" test, and Plaintiffs are not entitled to overtime, as they do not meet the "individual" test.

*FLSA and Overtime*

Title 29 U.S.C. § 207(a)(1) states that "no employer shall employ any of his employees who . . . is engaged in commerce or in the production of goods for commerce . . . for a workweek longer

than forty hours unless such employee received compensation . . . at a rate no less than one and one-half times the regular rate." Under the FLSA, an employer is required to pay overtime compensation if the employee can establish "enterprise coverage" or "individual coverage." 29 U.S.C. § 203(b), (s); *Thorne v. All Restoration Svcs., Inc.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006).

The FLSA defines an "enterprise engaged in commerce" as, among other requirements, an enterprise with annual gross revenue of $500,000 or greater. 29 U.S.C. § 203(s). Defendants have presented uncontroverted evidence that Defendants do not meet the revenue requirements for "enterprise coverage." (Doc. No. 33-4; Deposition of Mahunik). As such, Plaintiffs are not entitled to overtime compensation under this theory, as a matter of law.

For "individual coverage" to apply under FLSA, each Plaintiff must prove that he was: 1) engaged in commerce or 2) engaged in the production of goods for commerce. 29 U.S.C. § 207(a)(1). Plaintiffs contend:

1) that they were both involved in the production of goods for commerce "by virtue of the fact that they worked only on commercial projects, and painted pre-construction homes which were marketed and sold in interstate commerce, by David Weekley Homes' use of the internet and various other forms of interstate advertising mediums; and

2) Plaintiff, Torres-Murphy was "engaged in interstate commerce" pursuant to the FLSA, because he regularly and customarily transported goods which had traveled in interstate commerce from the Porter Paints store in Deland, Florida, to the goods' ultimate consumer, David Weekley Homes, at Defendants' job sites." (Doc. No. 40, pp. 1-2).

*Production of Goods for Commerce*

As set forth in 29 U.S.C. § 203(j), an employee:

shall be deemed to have been engaged in the production of goods if such

> employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof....

Plaintiffs contend that they meet this definition because they "worked exclusively on pre-construction homes for David Weekley Homes, while employed by Defendants, and the homes were then marketed and sold in interstate commerce." (Doc. No. 40 at p. 8). As alluded to above, however, there is no factual predicate supporting this assertion. The undisputed evidence is that these were residences built in Central Florida subdivisions, and there is nothing to establish *when* and *how* these units were marketed and sold (or, indeed, that they were ever marketed and sold), and certainly nothing to support an inference that the homes were to move in interstate commerce. *See Scott v. K.W. Max Investments, Inc.*, 256 Fed. Appx. 244, 248, 2007 WL 2850926, 3 (11th Cir. 2007) ("Scott also argues that because K.W. Max's business purpose was to buy and re-sell residential homes and property located in Florida, the homes at which he performed work were to be sold. There is no evidence in the record, however, that these homes were to move in interstate commerce.") Plaintiffs cite no authority to support a contention that a house painter is involved in interstate commerce.

Nor is the Court persuaded by Plaintiffs' second theory. The work of employees "engaged in commerce" involves or relates to "the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof." 29 C.F.R. § 776.9 (quotation omitted). According to the United States Supreme Court, Congress did not intend for the scope of the FLSA to be coextensive with Congress' power to regulate commerce. *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959). Instead, Congress intended to regulate only activities constituting interstate commerce, not activities merely *affecting* commerce. *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943).

According to the Eleventh Circuit, for an employee to be "engaged in commerce" under the FLSA:

> [H]e must be directly participating in the actual movement of persons or things in interstate commerce by (I) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel.

*Thorne v. All Restoration Services, Inc., supra*, 448 F.3d at 1266 (citing 29 C.F.R. § 776.23(d)(2), 29 C.F.R. § 776.24, and *McLeod*, 319 U.S. at 493-98). Plaintiff attempts to fall within this category, based on Plaintiff Torres-Murphy's picking up paint from a local paint store for use at the local job site. This contention, however, is foreclosed by *Thorne*.

In *Thorne*, the plaintiff "primarily performed mold and water damage restoration work for residential and commercial properties." 448 F.3d at 1265. He also performed ministerial work, including making purchases of goods for the company. *Id.* Thorne contended that these purchases constituted engagement in interstate commerce. The Eleventh Circuit disagreed:

> The Court finds that Thorne's testimony, stating he believed credit card bills came from Atlanta for purchases made at a local Home Depot was not sufficient evidence of engagement in interstate commerce to require submission of the issue to a jury.
>
> Moreover, the fact that some of the tools he purchased may have crossed state lines at a previous time does not in itself implicate interstate commerce. When goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further *intra* state movement of the goods are not covered under the Act. *McLeod,* 319 U.S. at 493, 63 S.Ct. 1248. Courts distinguish between merchants who bring commerce across state lines for sale and the ultimate consumer, who merely purchases goods that previously moved in interstate commerce for intrastate use. Therefore, a customer who purchases an item from Home Depot is not engaged in commerce even if Home Depot previously purchased it from out-of-state wholesalers.

448 F. 3d at 1267. Likewise, even if Plaintiff's assertions were properly supported and it was established that the paint did, in fact, travel interstate to the Porter Paints' shelf, Torres-Murphy's purchase of the paint from Porter Paints (or more accurately, transportation of the paint, as the paint

-8-

was charged to Defendant's account) does not constitute engaging in interstate commerce. *See Navarro v. Boney Automotive Repairs, Inc.,* 2008 WL 2315869 (11th Cir. June 6, 2008) (unpublished) (employee's activities – collecting motor parts from local auto parts stores and using the parts to repair automobiles – merely affected and did not implicate commerce and thus, were not covered by the Act). Plaintiffs' reliance on older cases is misplaced.[3]

The material facts are not in dispute. As neither Plaintiff can establish that they are entitled to overtime compensation either under the enterprise or the individual theory, the claims must fail, as a matter of law.

### *RECOMMENDATION*

It is therefore **respectfully recommended** that Defendants motion for summary judgment be **granted**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 15, 2008.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

---

[3] As the quoted excerpt shows, Plaintiff is incorrect in his assertion that "there was no proof in *Thorne,* that the Plaintiff transported goods which had previously traveled in interstate commerce, or that the ultimate consumer of the goods purchased by Plaintiff was anyone other than the Defendant-Employer" (Doc. No. 40 at 11). Here, there is no evidence that anyone other than Specialty Painting was the ultimate consumer. *See Guzman v. Irmadan, Inc.*, 551 F. Supp.2d 1368, 1372 (S.D. Fla. 2008) (relying on *Thorne* to find that cabinet installation company, not cabinet installation company's customers, was the ultimate consumer of goods purchased at local retail store for use in employees cabinet installation duties.)

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy